

**Shane R. Heskin**

1650 Market Street | One Liberty Place, Suite 1800 | Philadelphia, PA 19103-7395
Direct 215.864.6329 | Fax 215.399.9603
heskins@whiteandwilliams.com | whiteandwilliams.com

April 24, 2018

*By E-Mail and ECF*

Hon. Analisa Torres, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15D
New York, NY  10007

**RE:** *McNider Marine, LLC, et al. v. Yellowstone Capital, LLC, et al.*
    **Docket Number 17-cv-10225 (AT) - Motions to Dismiss**

Dear Judge Torres:

We write in response to the pre-motion letters by Defendants Yellowstone, Stern and MCA Recovery filed on April 20, 2018.

As an initial matter, these pre-motion letters do not comply with Your Honor's individual rules by failing to exchange letters before seeking relief from the Court.  Rather, MCA Recovery sent a pre-motion letter on April 16, 2018, and Yellowstone and Stern sent an e-mail to Plaintiffs on April 18, 2018.[1]  After Plaintiffs agreed to amend the complaint, Defendants filed letters with this Court contending that they do not have to comply with Your Honor's individual rules due to Defendants' self-perceived view as to the substantive merits of the claims and their alleged prior litigation history with counsel in other matters, involving other clients.

Although Plaintiffs are willing to amend the complaint to address the new issues raised for the first time by Defendants, it is respectfully submitted that none of the issues raised has merit.

   **The Usury Claim**

Defendants go to great lengths attempting to cast early seeds of doubt as to the merits of the underlying claims.  In doing so, Defendants cite a body of New York cases that stand for the uncontroversial position that MCA agreements are not necessarily usurious on their face.  Instead, the vast majority of these cases hold that usurious intent cannot be found based solely on

---

[1] At Defendants' request, Plaintiffs previously agreed to amend the complaint to correct typographical errors in the paragraph numbering, and to add further detail as to Stern's involvement directing the affairs of the Enterprise.

Delaware | Massachusetts | New Jersey | New York | Pennsylvania | Rhode Island

April 24, 2018
Page 2

the face of the agreement and therefore a plenary action is necessary to determine the true nature of the transaction.  As explained by Chief Justice John Marshall more than 100 years ago:

> The ingenuity of lenders has devised many contrivances, by which under forms sanctioned by law, the statute may not be evaded. Yet, it is apparent, that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter.  Courts, therefore, perceived the necessity of disregarding the form, and examining into the real nature of the transaction.

*Scott v. Lloyd*, 34 U.S. 418, 9 L.Ed. 178 (1835); *see also Van Bee Service Co. v. Household Finance Corp.*, 51 N.Y.S.2d 590, 611 (N.Y. Sup. Ct. 1944) ("The cupidity of lenders, and the willingness of borrowers to concede whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devises to evade the usury laws . . .").

Many of the cases relied upon by Defendants, including the recent *Champion* decision, have been dismissed because the victim failed to plead sufficient facts demonstrating usurious intent.  Indeed, it is because of these pleading requirements that Plaintiffs have gone to great lengths showing precisely how the agreements at issue are mere shams to avoid the usury laws.  Among these facts, Yellowstone has previously admitted that its MCA agreements are "loans":

> Been turned away for a small business credit card? **Apply at Yellowstone Capital for a <u>bad credit business loan, also known as a business cash advance</u>, or a merchant cash advance.**   Am. Compl.,¶ 101.

Moreover, in painting a one-sided picture of the law, Defendants failed to cite numerous other cases holding that MCA agreements are loans as a matter of law, or at a minimum, raise questions of fact requiring a plenary action.  *See Foward Fin. LLC v. Maxx Powersport LLC*, 2017 U.S. Dist. LEXIS 195991, *7 (D. Mass. Nov. 29, 2017) (denying motion to dismiss because "the Agreement is convoluted and difficult to understand, and seems to contain internal contradictions."); *Saturn Funding, LLC v. NRO Boston, LLC*, 2017 Mass. Super. LEXIS 3, *15 (Mass. Super. Ct. Feb. 21, 2017) ("The defendants have raised meritorious defenses, especially with regard to their allegations that the plaintiff charged them criminally usurious interest rates."); *QFC, LLC v. Iron Centurian, LLC*, 2017 N.Y. Misc. LEXIS 2609 (N.Y. Sup. Ct. July 5, 2017); *Merchant Funding Servs., LLC v. Volunteer Pharm., Inc.,* 44 N.Y.S.3d 876 (N.Y. Sup. Ct. 2016); *Pearl Capital Rivis Ventures, LLC v. RDN Constr., Inc*., 41 N.Y.S.3d 397(N.Y. Sup. Ct. 2016); *Math Magicians v. Capital,* 2013 Cal. App. Unpub. LEXIS 8694 (2d App. Dist. Nov. 26, 2013).

### The RICO Claim

Again, Defendants attempt to discredit Plaintiffs' claims by presenting an unbalanced view of the law.  Contrary to Defendants' assertion that the use of elaborate corporate schemes to avoid state usury laws does not implicate the RICO statute, a jury in this very federal courthouse recently handed down one of the largest RICO verdicts in history when it found Scott Tucker guilty of

April 24, 2018
Page 3

various RICO counts for using elaborate corporate devices to avoid state usury laws in issuing over $3.5 billion in illegal loans.  *See* Ex. 1.  Yellowstone may be on pace to dwarf that number, having issued over $460 million in MCA loans in just 2016 alone.  *See* Ex. 2.

Defendants also take exception to being tainted by the negative stigma attached to payday lending.  That is exactly why Plaintiffs have cited reports from national news media, consumer protection groups and regulatory agencies.  These are reliable sources equating the MCA industry to payday lending and are not mere conclusory allegations from a disgruntled victim.

Defendants also erroneously attack the sufficiency of the RICO pleading, contending that the RICO count fails to allege (1) an influencing enterprise that is sufficiently distinct from the legitimate enterprise; (2) any involvement by Defendant Stern with respect to the specific transaction at issue; and (3) a pattern of racketeering with respect to MCA Recovery.

First, the RICO count specifically alleges that the officers and principals of Yellowstone use the legitimate purpose of Yellowstone to further the illegitimate purpose of the Enterprise in order to solicit, fund and collect upon unlawful debts.  *See* Am. Compl., ¶ 153; *City of New York v. Smokes-Spirits.com, Inc*., 541 F.3d 425 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 1 (2010) (upholding RICO claim based on allegations that "the enterprise is an innocent corporation, with its own legal basis for existing, and the persons are employees or officers of the organization unlawfully directing the enterprise's racketeering activities.").

In addition, the RICO count alleges that the Enterprise is a group of individuals and corporations that are associated-in-fact.  *Id.*, ¶ 165.  Among the specific allegations demonstrating this association-in-fact, Plaintiffs allege that the agreements were funded by "pooling of capital of individual investors, Team AKB, and/or the Legitimate Enterprise."  *Id.*, ¶ 158.  Team AKB is alleged to be a group of individual investors that has an existence separate and apart from Yellowstone.  The same is true for the John and Jane Doe investors.  To the extent more detail is required, the names of these separate and distinct entities can be identified from Yellowstone's own internal documents.  *See* Ex. 3.

Second, Stern alleges that the RICO count does not allege that he had any direct involvement with respect to the specific transactions at issue.  The RICO count, however, alleges in detail how Stern furthered the purpose of the Enterprise by managing its day-to-day affairs and actively recruiting investors and salespersons.  *Id.*, ¶¶ 138-52. It therefore is not necessary to demonstrate that Stern had direct involvement with each specific transaction.  *Compare* Am. Compl., ¶¶ 138-52, 159, 161 (alleging ownership, active management and control over the Enterprise) *with* Ex. 4, Tucker Indictment, ¶ 2, 27; Ex. 5, Hallinan Indictment, ¶ 4-6 (alleging that Hallinan "owned, operated, controlled, and financed numerous business entities… which issued, serviced, funded, and collected debt from small, short-term, high-interest loans, commonly referred to as "payday loans").  But even if direct involvement is required (which it is not), "the Closer" identified in paragraph 152 of the complaint is Juan Monegro and the transactions at issue here were directly funded by Monegro.  Stern directly recruited Monegro to further the purpose of the Enterprise by paying him $50,000 in cash and boasting about it publicly.  *See id.*, ¶ 152; Ex. 6-7.

Third, MCA Recovery asserts that the RICO count should be dismissed because it does not allege that it engaged in a pattern of racketeering or that it was involved in the issuance of the transactions at issue. MCA Recovery is simply wrong on the law. *See Salinas v. U.S*., 522 U.S. 52, 63, 118 S. Ct. 469, 476, 139 L.Ed.2d 352, 365-66 (1997) (holding that Sec. 1962 does not require a defendant to commit two predicate acts themselves and that so long as the parties agree to pursue the same criminal objective, they are responsible for the acts of the other); Am. Compl., ¶ 156 (alleging that Defendants "conspired to fund, issue, and collect on loans disguised as 'factoring agreements' given to small businesses.").

It is also incorrect on the facts. As alleged in the Amended Complaint, Yellowstone uses MCA Recovery to further the illegal purpose of the Enterprise through the collection of the Enterprise's unlawful debts. Am. Compl., ¶¶ 163, 170, 172, 175. Indeed, the relationship between MCA Recovery and Yellowstone goes well beyond a mere conspiracy to further the purpose of the Enterprise. Yellowstone actually owns MCA Recovery. *See* Ex. 8.

MCA Recovery is also mistaken that it had no direct involvement with the issuance of the unlawful loans. At the time of the transactions at issue, Vadim Serebro acted as Chief Litigation Counsel for both Yellowstone and MCA Recovery, *see* Exs. 9-10, and Mr. Serebro was directly involved in the underwriting of the very transactions at issue. *See* Ex. 11. In addition, MCA Recovery issued an illegal restraining notice on McNider's local credit union in Alabama under the color of New York law, despite lacking personal jurisdiction over an Alabama credit union. MCA Recovery also froze McNider's credit card processing account with Square, Inc., which is still frozen to this date.

### Rooker-Feldman/Res Judicata

McNider's claims are not barred by *Rooker-Feldman* or res judicata because New York does not have a compulsory counterclaim rule. As explained by the court in *Lopez*:

> [Defendant] mistakenly suggests that application of New York's transactional approach bars all claims from all parties arising out of the foreclosure action. It does not. New York does not have a compulsory counterclaim rule. As a result, res judicata will not ordinarily bar claims that could have been but were not brought as counterclaims in the prior action…..
>
> Plaintiffs request a variety of different types of relief as a result of defendants' alleged violations of HOEPA, TILA, the Deceptive Practices Act, and unconscionability. The following are not available from this Court as they undermine the rights and interests established by the state foreclosure judgment: voiding of any lien and/or security interest obtained by defendants or rescission. However, this Court does have the power to grant remedies that have no effect on the state court foreclosure judgment, such as statutory and punitive damages under TILA and HOEPA and monetary damages under the Deceptive Practices Act.

*Lopez v. Delta Funding Corp*., 2000 U.S. Dist. LEXIS 22779, *25-26 (E.D.N.Y. June 6, 2000).

April 24, 2018
Page 5

Plaintiffs respectfully thank the Court for its consideration.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

Shane R. Heskin

SRH:kms

cc: Counsel for all parties (via ECF and e-mail)